FILED
2014 Sep-26  PM 05:01
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| BLACK WARRIOR RIVERKEEPER, INC., ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) ) | Case No. CV-13-K-0410-S |
| ) ) | |
| ALABAMA UTILITY SERVICES, LLC ) ) ) | |
| Defendant. ) ) | |
| _____ ) | |

## JOINT MOTION TO LODGE AND ENTER
## SETTLEMENT AGREEMENT AND CONSENT DECREE

Plaintiff Black Warrior Riverkeeper ("Riverkeeper") and Defendant Alabama Utility Services, LLC ("AUS") lodge the attached Settlement Agreement and Consent Decree ("the Consent Decree') with the Court.  The Consent Decree represents settlement of all claims presented by Riverkeeper against AUS.  The parties represent that the settlement terms are appropriate, reasonable and in the public's best interest.

Under Section 505(c)(3) of the Clean Water Act and 40 C.F.R. 135.5(b), the United States has 45 days from receipt of a consent judgment by the Department of Justice ("DOJ") Citizen Suit Coordinator (on behalf of the Attorney General) and USEPA to complete the federal review and provide any comments to the Court.  At the conclusion of that review period, the parties jointly request that the Court enter the Consent Decree.

Respectfully submitted this 26th day of September, 2014.


*s/ Eva L. Dillard*
Eva L. Dillard, Staff Attorney
ASB-4118-A59E
Black Warrior Riverkeeper, Inc.
712 37th Street South
Birmingham, AL 35222-3206
(205) 458-0095
edillard@blackwarriorriver.org
Counsel for Plaintiff Black Warrior Riverkeeper, Inc.


*s/Byron Bart Slawson*
Byron Bart Slawson
Slawson, Esq., P.C.
The Sidewinder Building
8933 Glendale Drive
Birmingham, Alabama 35206
(205) 836-0000
bartslawsonlaw@att.net
Counsel for Defendant Alabama Utility Services, LLC

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| BLACK WARRIOR RIVERKEEPER, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. CV-13-K-0410-S |
| | ) ) | |
| ALABAMA UTILITY SERVICES, LLC | ) ) ) | |
| Defendant. | ) ) ) | |

## SETTLEMENT AGREEMENT AND CONSENT DECREE

This matter is now before the Court at the request of all parties for the approval and entry of a consent decree representing settlement of all claims presented by Plaintiff Black Warrior Riverkeeper ("Riverkeeper") against Defendant Alabama Utility Services, LLC ("AUS"). The Court, having reviewed the terms set out herein, finds the settlement terms appropriate and reasonable and in the public's best interest and hereby approves the same.

**NOW, THEREFORE,** with the consent of the Parties, **IT IS HEREBY ADJUDGED, ORDERED,** and **DECREED** as follows:

## I. INTRODUCTION

Riverkeeper filed this action under the Clean Water Act ("CWA") § 505, 33 U.S.C. § 1365, for declaratory relief, injunctive relief, penalties and costs of litigation (including reasonable attorney and expert witness fees) arising out of AUS's discharge of pollutants from the Donaldson Correctional Facility Wastewater Treatment Plant ("the Donaldson Plant"). Riverkeeper alleged that AUS, as the operator of the Donaldson Plant under a lease and services agreement with the Alabama Department of Corrections, was in violation of sections 301 and 402 of the CWA (33 U.S.C. §§ 1311 and 1342) and section 122.1 of Title 40 of the Code of Federal Regulations in its operation of the Donaldson Plant. These laws require that no facility shall discharge pollutants to waters of the United States except as authorized by a permit issued pursuant to the National Pollutant Discharge Elimination System ("NPDES"). The dates and details of these violations are set out in Table 1 of the Complaint. (Doc. 1). AUS filed an Answer denying Riverkeeper's allegations. (Doc. 17).

## II. JURISDICTION AND VENUE

The Court has jurisdiction over this matter and of Riverkeeper's claims pursuant to 28 U.S.C. § 1331 and 33 U.S.C. § 1365 (a). Venue is appropriate in

the Northern District of Alabama because the Donaldson Plant, the source of the alleged violations herein, is within the Northern District of Alabama. *See* CWA § 505(c)(1), 33 U.S.C. §1365(c)(1).

## III.   EFFECT OF SETTLEMENT

In exchange for AUS's agreement to and compliance with the terms of this settlement, Riverkeeper hereby releases and forever discharges AUS and its officers, directors, shareholders, partners, attorneys, predecessors, successors, representatives, insurers, assignees, agents, employees, executors, administrators, heirs, and all persons acting by, through, or in any way on behalf of AUS of and from any and all claims specifically alleged by Riverkeeper in the Complaint in this action as well as any violations made known to Riverkeeper by AUS in writing prior to the effective date of this Decree. The Parties further covenant and agree that this Agreement may be pleaded or asserted by or on behalf of AUS as a defense and complete bar to any action or claim that may be brought against or involving AUS by anyone acting or purporting to act on behalf of Riverkeeper with respect to any of the matters within the scope of this Agreement excepting only the obligations of the parties under this Agreement.

Riverkeeper specifically reserves its rights to, and does not release, any claim not specifically released herein that they may discover in the future arising out of the operation of the Donaldson Plant by AUS, but which is not specifically

3

alleged in the Complaint in this action. Riverkeeper specifically reserves its rights to, and does not release, any claim not specifically released herein that it may have in the future arising out of AUS's operation of the Donaldson Plant after the Effective Date or arising out of acts of AUS after the Effective Date. This Consent Decree shall become effective upon the latter of its entry or its entry and any required time period for notification and consideration by the United States ("Effective Date").

## IV.   BINDING EFFECT

1.     The provisions of this Consent Decree shall apply to and be binding on AUS and its officers, directors, employees, agents, servants, successors and assigns, upon all persons, firms, and corporations in active concert or participation with AUS or its officers, directors, employees, agents, servants, successors and assigns. AUS is an Alabama Limited Liability Company and as such this section and this entire agreement applies to AUS LLC as a corporation under Alabama law only and not to any individual not acting in a corporate capacity or on behalf of the corporation. Furthermore none of the personal assets of individuals involved in the operation or ownership of AUS LLC are implicated or liable in any way related to this agreement.

2.     No transfer of any ownership interest in or any interest in the operation of the Donaldson Plant shall relieve AUS of its obligation to ensure that the terms of

4

this Consent Decree are implemented. Any transfer involving ownership, lease or operation of the Donaldson Plant, or any portion thereof, to any other person or entity must be conditioned upon the transferee's agreement to be added as a party to the Consent Decree and to be jointly and severally liable with AUS to undertake the obligations required by all provisions of the Consent Decree.  At least thirty (30) days prior to any such prospective transfer, AUS shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the above referenced proposed written transfer agreement, to Riverkeeper in accordance with Section XV (Form of Notice).  Any noncompliance with this Paragraph constitutes a violation of this Consent Decree.   Moreover, any sale or transfer of AUS's interests in or operating role with respect to the Donaldson Plant shall not in any manner relieve AUS of its responsibility to meet the terms and conditions of this Consent Decree, unless the Parties so agree in writing.

3.     All plans, deadlines, obligations established by reports, and other items required to be submitted to Riverkeeper under this Consent Decree shall be enforceable under this Consent Decree.

4.     AUS's duty to comply with the terms of this Consent Decree is not contingent upon its financial capabilities and failure to comply is not excused by a lack of funds.

## V.    SUPPLEMENTAL ENVIRONMENTAL PROJECT

In settlement of Riverkeeper's claims, AUS shall pay the sum of One Hundred Thousand Dollars ($100,000.00) for the establishment of a Supplemental Environmental Project ("SEP") in the Valley Creek subwatershed of the Black Warrior River.  Said sum shall be paid in ten increments of Ten Thousand Dollars ($10,000.00) per year for ten (10) consecutive years, commencing March 1, 2017 and ending March 1, 2027.  AUS shall make these payments to the Clerk of the Court for remittance to the Freshwater Land Trust on or before March 1 of each year the payments are due and owing.  AUS shall notify and send copies of any relevant documents to Riverkeeper at the time each payment is made.  The Clerk shall remit said funds to "Freshwater Land Trust" ("Trust") and tender the check to the Trust at the following address:

Freshwater Land Trust
2308 1st Ave. North
Birmingham, AL 35203

## VI. INJUNCTIVE RELIEF

In further settlement of Riverkeeper's claims the following injunctive relief is agreed upon by the Parties and ordered by the Court.

(1)    AUS shall comply fully with all permits issued to it by the Alabama Department of Environmental Management ("ADEM");

(2)     AUS shall complete and implement the following improvements at the Donaldson Plant as follows:

(A)     AUS shall provide and install one new floating brush rotor in each clarifying basin. ("Clarifying Basin #1" refers to the clarifying basin that has been in continuous service during AUS's operation at the Donaldson Plant; "Clarifying Basin #2" refers to the basin that was out of service and placed back in operation Fall 2013.) AUS shall install the floating brush rotor in Clarifying Basin #1 by March 1, 2015 and in Clarifying Basin #2 by March 1, 2016.

(B)     AUS shall dewater and refurbish Clarifying Basin #1 and Clarifying Basin #2 as follows:

a.      AUS shall dewater Clarifying Basin #1 no later than January 2, 2015. AUS shall dewater Clarifying Basin #2 no later than January 2, 2016.

b.      AUS shall then retain an engineering expert, such as Scott Phillips of Southeast Engineering and Consulting LLC or another qualified engineer to perform a complete engineering, operational and structural integrity inspection and evaluation ("the Assessment") of each dewatered basin to determine the extent of the required refurbishment. Refurbishment of each basin may include, but not be limited to, any sanding, patching, welding and coating required to address any wear, corrosion and/or pitting of the basins identified as part of the Assessment. For Clarifying Basin #1, the

7

Assessment shall occur by February 1, 2015. For Clarifying Basin #2, the Assessment shall occur by February 1, 2016. Representatives of Riverkeeper, including its engineer, may attend the Assessment of each basin. Any photographs, videos, tests or sample results, reports, recommendations or other documents must be shared promptly with Riverkeeper. Riverkeeper shall be responsible for paying its own engineer.

c.     As a result of the Assessment, AUS or its consulting engineer shall furnish an engineering report to Riverkeeper within five (5) business days of the inspection/evaluation.    That report shall contain the findings and conclusions of the Assessment as well as photographs, videos, or drawings, along with an analysis of operational conditions and the state of plant equipment at the time of the Assessment.  The report shall also contain the recommendations for repairs, maintenance or upgrades that should occur at each basin as well as the sequencing and timetable for the recommended repairs, maintenance or upgrades.  Within five (5) business days of receiving the report, Riverkeeper will notify AUS of any objections to the engineering report or any additional repairs, maintenance or upgrades required by the Assessment or Riverkeeper but not contained in the report's list of repairs. Riverkeeper and AUS will attempt to resolve any differences promptly but if they cannot either party may call for the immediate appointment of a third

neutral engineer (at the expense of AUS) to resolve the dispute. The Parties must agree whom to select as the third engineer. Time is of the essence in working out any disagreements that may occur over what may constitute the proper repairs, maintenance or upgrades so as not to delay or interfere with the deadlines established by the Consent Decree. If any such disagreements occur, AUS may request a brief delay in the schedule established by this Consent Decree commensurate with the time it takes to resolve the disagreement.

d.      Any repairs or maintenance performed as a result of Section VI (B)(2)(a). through c. herein must occur on or before March 1, 2015 (Clarifying Basin #1) and March 1, 2016 (Clarifying Basin #2).

e.      AUS will submit documentation to Riverkeeper showing the adequate completion of the engineering plan described in Section VI (B)(2)(c) herein. Such documentation shall include, but not be limited to, copies of communications with engineers, contractors or vendors as well as any invoices, reports, drawings, photographs and/or video. Representatives of Riverkeeper will be afforded an opportunity, upon reasonable notice to AUS, to inspect any repairs or maintenance performed by AUS before the basins are refilled and placed back in service.

(C)     Based upon the recommendations of the engineering report, AUS will repair or replace and level the V-notch weir in each basin on or before March 1, 2015 (Clarifying Basin #1) and March 1, 2016 (Clarifying Basin #2).

(D)     AUS shall clean the outer distribution channel in each basin and repair the deformed channel walls on or before March 1, 2015 (Clarifying Basin #1) and March 1, 2016 (Clarifying Basin #2).   Thereafter, AUS shall perform necessary maintenance and remove solids as indicated from the outer distribution channels to avoid the buildup that deformed the channel walls in the past.

(E)     Based upon the recommendations of the engineering report, AUS shall modify, repair and/or replace the sludge return system for each basin on or before March 1, 2015 (Clarifying Basin #1) and March 1, 2016 (Clarifying Basin #2).

(F)     AUS shall upgrade the electrical control panels for each sludge return system on or before March 1, 2015 (Clarifying Basin #1) and March 1, 2016 (Clarifying Basin #2).

(G)     AUS shall rehabilitate a second set of sludge beds (currently not in use) so that they are online and in service by June 1, 2015.

(H)     As a part of the Assessment, AUS shall hire an electrical contractor to conduct a complete electrical systems evaluation of the Donaldson Plant, to be completed by March 1, 2015.   Any damaged, deficient or failing components or

systems as well as any systems that do not meet NEMA code will be repaired or replaced by September 1, 2015.

(I)    If, as a result of the Assessment, AUS determines that Clarifying Basin #1 and/or Clarifying Basin #2 is damaged or breached such that it cannot be refurbished, AUS shall immediately provide notice to Riverkeeper.  Thereafter, AUS shall develop a compliance plan that shall specify in detail how AUS will operate the Donaldson Plant in compliance until the basin can be replaced.  From the date of discovery of any such damage or breach, AUS shall have up to thirty-six (36) months to replace the basin and put it in service.

(J)    Engineering designs and analyses required to be performed pursuant to this Consent Decree shall be conducted using sound and best engineering practices.

(K)    During such time as AUS is evaluating and refurbishing the clarifying basins, Riverkeeper shall not hold AUS responsible for any violations of NPDES Permit No. AL0045560 for a period of ninety (90) days from the date of the Assessment for each basin.

(L)    During the time that this Consent Decree is open AUS will communicate openly and share all environmental compliance and engineering documents with Riverkeeper.

## VII.  STIPULATED PENALTIES

11

1.      AUS shall pay stipulated penalties in the amount of Two Hundred Fifty Dollars ($250.00) per day toward the SEP indentified in Section V for failure to meet any deadline established by the Consent Decree, unless excused under Section VIII (Force Majeure).  Compliance by AUS shall include completion of an activity under this Consent Decree or a plan approved under this decree or any matter under this decree in an acceptable manner approved by Riverkeeper and within the specified time schedules in and approved under this Decree. Any modifications of the time for performance agreed to by the Parties shall be in writing, signed and dated by both parties.

2.      AUS shall pay stipulated penalties for violations of, or noncompliance with, the requirements of this Consent Decree, as set forth below, unless excused under Section VIII (Force Majeure). A violation or noncompliance includes failing to perform an obligation required by the terms of this Consent Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Consent Decree and within the specified time schedules or by the date(s) established by or approved under this Decree.

3.      All penalties begin to accrue on the day that complete performance is due or a violation occurs, and continue to accrue through the final day of correction of the noncompliance.  Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Decree.

12

3.     Following Riverkeeper's determination that AUS has failed to comply with the requirements of this Decree, Riverkeeper shall give Defendant written notification of the same and describe the noncompliance. Said notice shall also indicate the amount of penalties due. AUS reserves the right, in good faith, to challenge Riverkeeper's determination of a violation.  If parties cannot agree such dispute may be submitted to the Court for a decision.

4.     All penalties owed shall be payable within 30 days of receipt of the notification of noncompliance.  Interest shall begin to accrue on the unpaid balance at the end of the 30-day period.  Such penalties shall be paid by certified check to the Freshwater Land Trust for the SEP described in Section V and mailed to the following address:

Freshwater Land Trust
2308 1st Ave. North
Birmingham, AL 35203

## VIII. FORCE MAJEURE

1.     "Force Majeure," for the purposes of this Consent Decree, is defined as any event arising from causes beyond the control of AUS, of any entity employed or controlled by AUS, or any contractor retained by AUS, that delays or prevents the performance of any obligation under this Consent Decree despite the best efforts of AUS to fulfill the obligation.   The requirement that AUS exercise "best efforts to fulfill the obligation" includes using the best efforts to anticipate any potential

13

force majeure event and best efforts to address the effects of the potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible.   "Force majeure" does not include financial inability to comply with the terms of the Consent Decree, changes in the cost of compliance with the Consent Decree, or a failure to satisfy the requirements of Sections V, VI, VII and IX.

2.   Unanticipated or increased costs or expenses associated with the performance of AUS's obligations under the Consent Decree shall not constitute a Force Majeure event or circumstances beyond AUS's control nor serve as the basis for an extension of time under the Consent Decree.

3.   If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, AUS shall notify Riverkeeper in writing not later than fifteen calendar days after the time AUS first knew or should have known by the exercise of due diligence that the event might cause a delay. In the written notice, AUS shall provide an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; and AUS's rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim. AUS shall

include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure, if AUS intends to claim Force Majeure. The written notice required by this paragraph shall be effective upon the mailing of the same.

4.      Failure by AUS to comply with the requirements in Paragraph (3) shall preclude AUS from asserting any claim of Force Majeure for the event for the period of time of such failure to comply, and for any additional delay caused by such failure.

## IX.    COSTS

AUS will pay Twenty-Five Thousand Dollars ($25,000.00) to Black Warrior Riverkeeper as costs of this litigation and reasonable attorneys' fees.  AUS shall pay Twelve Thousand Five Hundred Dollars ($12,500) within thirty (30) days of the Effective Date of this Decree and shall pay the remaining Twelve Thousand Five Hundred Dollars ($12,500) within thirty (30) days thereafter.

## X.     RETENTION OF JURISDICTION, TERMINATION OF CONSENT DECREE

1.      This Court shall retain jurisdiction for the purpose of adjudicating all disputes between the Parties, which may arise under this Consent Decree.

2.      The Court shall retain jurisdiction over this case until twelve months after the Parties and their counsel certify that they have been informed by the respective

engineers that all onsite changes and improvements and all other obligations required herein are completed, or by consent of all Parties.

## XI.   CONFIDENTIALITY

The Parties and their attorneys shall keep all information protected by the Stipulated Protective Order (Doc. 25) as well as any information obtained through discovery or through subpoenas to third parties during this case confidential, except that Riverkeeper may disclose the fact and terms of the settlement. Riverkeeper agrees that counsel for AUS may preview Riverkeeper's press release announcing the settlement.

## XII.   SEVERABILITY

The provisions of this Consent Decree shall be severable, and should any provisions be declared by a court of competent jurisdiction to be unenforceable, the remaining provisions shall remain in full force and effect.

## XIII. LODGING AND APPROVAL OF DECREE

Pursuant to 33 U.S.C. §1365, this Consent Decree will be lodged with the Court and simultaneously presented to the U.S. Department of Justice for its review and comment for a period of up to forty-five (45) days.  After the review period, this Consent Decree may be entered by the Court.  If this Consent Decree is not entered by the Court, the Parties shall retain all rights they had in this litigation before lodging of this Consent Decree.  The Parties agree to cooperate in good

faith in order to expeditiously obtain U.S. Department of Justice review of the lodged Consent Decree, and Court approval.   In the event the Department of Justice proposes modifications to this Consent Decree, the Parties agree to confer and undertake good faith efforts to resolve any disputes that may arise out of the review by the Department of Justice.

## XIV. COMMUNICATIONS

1.    Except as specified otherwise, when AUS or Riverkeeper transmits any written notification (including all reports) or communication required by or in conjunction with the terms of the Consent Decree, the notification shall be addressed as follows either to physical address or listed email address:

As to Riverkeeper:

Black Warrior Rivekerkeeper, Inc.
712 37th Street South
Birmingham, AL 35222-3206
Attention:  Nelson Brooke, Riverkeeper, and Eva Dillard, Staff Attorney
nbrooke@blackwarriorriver.org ; edillard@blackwarriorriver.org

As to AUS:

Byron Bart Slawson
Attorney for Alabama Utility Services, LLC
Slawson, Esq., P.C.
The Sidewinder Building
8933 Glendale Drive
Birmingham, Alabama 35206
bartslawsonlaw@att.net

17

2.     AUS agrees to accept service of process by email with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

3.     The Parties shall immediately notify one another of any change of address, whether physical or email.

## XV.  SIGNATORIES

The undersigned representatives of the Parties certify that they are fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such party to this document.

This Consent Decree may be executed in counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same agreement.

ENTERED and DONE this _____ day of September , 2014.

_____

ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE


FOR PLAINTIFF BLACK WARRIOR RIVERKEEPER, INC.


_____
Nelson Brooke, Riverkeeper
Black Warrior Riverkeeper, Inc.
712 37th Street South
Birmingham, AL 35222-3206
(205) 458-0095


_____
Gilbert E. Johnston, Jr.,  Board President
Black Warrior Riverkeeper, Inc.
712 37th Street South
Birmingham, AL 35222-3206
(205) 458-0095


_____
Eva L. Dillard, Staff Attorney
ASB-4118-A59E
Black Warrior Riverkeeper, Inc.
712 37th Street South
Birmingham, AL 35222-3206
(205) 458-0095

19

FOR DEFENDANT ALABAMA UTILITY SERVICES, LLC

_____

Alabama Utility Services, LLC
By agent Byron Bart Slawson with the express written authorization of all
members and owners of AUS pursuant to a corporate resolution passed September
23, 2014

_____

Byron Bart Slawson
Attorney for Alabama Utility Services, LLC
Slawson, Esq., P.C.
The Sidewinder Building
8933 Glendale Drive
Birmingham, Alabama 35206
(205) 836-0000